# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| TRUE TEMPER SPORTS, INC., et al., | : Case No. 09-13446 (PJW) |
| | : |
| Debtors.[1] | : Joint Administration Requested |
| | : Related Docket Nos. 15, 53 and 55 |

## FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364

Upon the motion, dated October 8, 2009, (the **"DIP Motion"**), of True Temper Sports, Inc. (**"True Temper Sports"** or **"Borrower"**), True Temper Corporation (**"Holdings"**) and True Temper Sports-PRC Holdings (**"PRC"**), as debtors and debtors in possession (collectively, the **"Debtors"**), in the above-referenced cases (the **"Cases"**), seeking entry of a final order (this **"Final Order"**) pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 365, 507 and 552 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the **"Bankruptcy Code"**), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the **"Local Rules"**), that, among other things:

       (i)     authorizes the Borrower to obtain, and authorizes each of Holdings and PRC (collectively, **"Guarantors"**) to guarantee, jointly and severally, the Borrower's obligations

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: True Temper Sports, Inc. (2620), True Temper Corporation (4519), and True Temper Sports-PRC Holdings, Inc. (6895). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 8275 Tournament Drive, Suite 200, Memphis, Tennessee 38125.

in respect of, senior secured postpetition financing, which if approved on a final basis, would consist of:

(a)  a senior secured, super priority, non-amortizing revolving credit facility of up to $10 million in aggregate principal amount (the "**Revolving DIP Loans**" and such credit facility, the "**Revolving DIP Facility**") pursuant to the terms of (x) this Final Order and the interim order approving the DIP Facilities (as defined below) that was previously entered by this Court on October 9, 2009 (Docket No. 53) (the "**Interim Order**"), (y) that certain Senior Secured Super-Priority Debtor-In-Possession Credit Agreement in substantially the form attached to the DIP Motion (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "**DIP Credit Agreement**")[2] among Borrower, Holdings, General Electric Capital Corporation ("**GECC**") as sole lead arranger, sole bookrunner and sole syndication agent (in such capacity, "**DIP Arranger**") and as administrative agent and co-collateral agent (in such capacities, and including any successor administrative agent and co-collateral agent, the "**Revolving DIP Administrative Agent**") for itself and certain other financial institutions as revolving lenders (the "**Revolving DIP Lenders**" and together with the Revolving DIP Administrative Agent, collectively, the "**Revolving DIP Secured Parties**") and Credit Suisse, acting through its Cayman Islands Branch ("**Credit Suisse**"), as term agent and co-collateral agent (in such capacities, and including any successor administrative and co-collateral agent, the "**Roll Up DIP Administrative Agent**" and together with the Revolving DIP Administrative Agent, the "**DIP Administrative Agents**") for the Roll Up DIP Lenders (as defined below and together with the Revolving DIP Lenders, collectively, the "**DIP Lenders**") (the DIP Arranger, the Revolving DIP Administrative Agent, the Roll Up DIP Administrative

---

[2] Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the DIP Credit Agreement.

Agent, and any other documentation agent, administrative agent, collateral agent, co-agent and other agents (and successor agents) for the DIP Lenders in respect of the DIP Facilities, collectively, the "**DIP Agents**" and together with the DIP Lenders and any letter of credit issuing banks, collectively, the "**DIP Secured Parties**"), and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement) (together with the DIP Credit Agreement, collectively, the "**DIP Loan Documents**"); and

(b)      a roll up of $80 million of the Prepetition First Lien Indebtedness (as defined below) (the holders of such rolled up Prepetition First Lien Indebtedness, the "**Roll Up DIP Lenders**", and together with the Roll Up DIP Administrative Agent, collectively, the "**Roll Up DIP Secured Parties**") and such rolled-up Prepetition First Lien Indebtedness, the "**Roll Up DIP Loans**" and together with the Revolving DIP Loans, collectively, the "**DIP Loans**", and such credit facility, the "**Roll Up DIP Facility**," and together with the Revolving DIP Facility, collectively, the "**DIP Facilities**"), subject to the terms and conditions of this Final Order, the Interim Order and the DIP Loan Documents (all DIP Loans (including all Roll Up DIP Loans) made to or for the benefit or account of, and all guaranties issued by, the respective Debtors pursuant to the DIP Loan Documents, the Interim Order and this Final Order, and all other obligations and liabilities of the Debtors arising under the DIP Loan Documents, the Interim Order and this Final Order, including, without limitation, all Obligations as defined in the DIP Credit Agreement, collectively, the "**DIP Obligations**");

(ii)      approves the terms of, and authorizes the Debtors to execute and deliver, and perform under, the DIP Credit Agreement and the other DIP Loan Documents and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(iii)     authorizes each Debtor to grant (x) to the DIP Administrative Agents, for the benefit of itself and the other DIP Secured Parties, Liens on all of the Collateral (as defined below) pursuant to sections 364(c) and (d) of the Bankruptcy Code, which Liens shall be senior to the Primed Liens (as defined below) but shall be junior to any valid, enforceable and non-avoidable Liens that are (A) in existence on the Petition Date, (B) either perfected as of the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (C) senior in priority to the Prepetition Liens pursuant to applicable law, and (y) to the DIP Secured Parties super-priority administrative claims having recourse to all prepetition and postpetition property of the Debtors' estates, now owned or hereafter acquired, including Avoidance Actions (as defined below), and proceeds thereof;

(iv)     authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), including, without limitation, Cash Collateral in which the Prepetition Secured Parties (as defined below) and/or the DIP Secured Parties have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Final Order, the Interim Order or otherwise;

(v)     grants, as of the Petition Date and in accordance with the relative priorities set forth herein, certain adequate protection (x) to the Prepetition First Lien Secured Parties, consisting of, among other things, First Priority Adequate Protection Liens (as defined below) and current payment of accrued and unpaid prepetition and postpetition interest at the default rate and reimbursable fees and expenses, and (y) to the Prepetition Second Lien Secured Parties consisting of, among other things, Second Priority Adequate Protection Liens (as defined below);

CH\1129761.6

(vi)     vacates the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents, the Interim Order and this Final Order; and

(vii)     waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of the Interim Order and this Final Order.

Having considered the DIP Motion, the Declaration of Jason A. Jenne in Support of Chapter 11 Petitions and First Day Pleadings, the DIP Credit Agreement, the evidence submitted at the interim hearing on the DIP Motion (the "**Interim Hearing**") and the evidence submitted at the final hearing on the DIP Motion (the "**Final Hearing**"); and the Interim Order having been entered on October 9, 2009; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014 and all applicable Local Rules, due and proper notice of the DIP Motion, the Interim Hearing and the Final Hearing having been given; the Interim Hearing having been held and concluded on October 9, 2009 and the Final Hearing having been held and concluded on October 30, 2009; and it appearing that approval of the final relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and their equity holders, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED[3], that:**

A.     **Petition Date**.  On October 8, 2009 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**").  The Debtors have continued in the management and operation of their business and property as debtors-in-possession pursuant to

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

sections 1107 and 1108 of the Bankruptcy Code. No statutory committee of unsecured creditors, trustee or examiner has been appointed in the Cases.

B. **Jurisdiction and Venue**. This Court has core jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 and the Local Bankruptcy Rules.

C. **Notice**. The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001. In accordance with the Interim Order, notice of the entry of the Interim Order and of the Final Hearing, together with a copy of the Interim Order, have been served by the Debtors, by United States mail, first-class postage pre-paid, on October 10, 2009, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the United States Securities and Exchange Commission, (iii) the Office of the United States Attorney for the District of Delaware, (iv) the Internal Revenue Service, (v) those entities or individuals included on the Debtors' list of largest unsecured creditors on a consolidated basis, (vi) counsel to the respective Prepetition Agents (as defined below), (vii) the Prepetition Agents, (viii) counsel to the DIP Agents, (ix) the Pension Benefit Guaranty Corporation, and (x) the Prepetition Indenture Trustee. In addition, notice of entry of the Interim Order and of the Final Hearing was served by the Debtors by facsimile, overnight mail or United States express mail, postage pre-paid, on October 26, 2009, to the additional parties that received notice of the Interim Hearing. Under the circumstances, such notice of DIP Motion, the Interim and Final Hearings, and the entry of the Interim Order and the Final Order constitutes due and sufficient notice thereof and complies with

Bankruptcy Rule 4001(b), (c) and (d) and the Local Bankruptcy Rules, and no further notice of the relief sought at the Interim Hearing or the Final Hearing and the relief granted herein is necessary or required.

D. **Debtors' Stipulations Regarding the Prepetition First Lien Credit Facility**. Without prejudice to the rights of parties in interest to the extent set forth in Paragraph 6 below, the Debtors admit, stipulate, acknowledge and agree (Paragraphs D(i) through D(v) hereof shall be referred to herein collectively as the **"Debtors' Stipulations"**) as follows:

(i) Prepetition First Lien Credit Facility. As of the Petition Date, True Temper Sports as borrower, and Holdings, as guarantor, the financial institutions parties thereto from time to time as lenders (the **"Prepetition First Lien Lenders"**), and Credit Suisse as administrative agent for the Prepetition First Lien Lenders (in such capacity, and including any successor agents, the "Prepetition First Lien Administrative Agent") and as collateral agent for the Prepetition First Lien Lenders (in such capacity, and including any successor agents, the **"Prepetition First Lien Collateral Agent"** and together with the Prepetition First Lien Administrative Agent, and any other documentation agent, administrative agent, collateral agent, co-agent and other agents for the Prepetition First Lien Lenders in respect of the Prepetition First Lien Credit Facility (as defined below), collectively, the **"Prepetition First Lien Agents"** and together with the Prepetition First Lien Lenders (collectively, the **"Prepetition First Lien Secured Parties"**), were parties to that certain Amended and Restated Credit Agreement, dated as of March 27, 2006 (Docket No. 41) (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the **"Prepetition First Lien Credit Agreement"** and together with the other Loan Documents (as defined in the Prepetition First Lien Credit Agreement), in each case as amended, restated, supplemented or otherwise modified prior to the

CH\1129761.6

Petition Date, collectively, the **"Prepetition First Lien Loan Documents"** and the credit facility contemplated therein, the "**Prepetition First Lien Credit Facility**"). As of the Petition Date, the aggregate outstanding principal amount of the loans, letters of credit and other Obligations (as defined in the Prepetition First Lien Credit Agreement) arising under the Prepetition First Lien Loan Documents was no less than approximately $104 million plus all accrued and unpaid interest, costs, expenses, fees (including reimbursable attorney and other advisor fees and expenses), other charges (in each case, to the extent reimbursable under the Prepetition First Lien Loan Documents) and other obligations owing to the Prepetition First Lien Secured Parties or affiliates thereof, including, without limitation, any amounts under any Specified Hedging Agreement (as defined in the Prepetition First Lien Credit Agreement) (all Obligations under, and as defined in the Prepetition First Lien Credit Agreement, together with any other amounts owing by the applicable Debtors under the Prepetition First Lien Loan Documents, collectively, the **"Prepetition First Lien Indebtedness"**).

(ii)    <u>Prepetition First Liens and Prepetition First Collateral</u>.  The Prepetition First Lien Indebtedness is secured by Liens granted to, or for the benefit of, Prepetition First Lien Secured Parties (the **"Prepetition First Liens"**) on substantially all of the personal and real property of the Debtors, as further described and defined in the Prepetition First Lien Loan Documents, which for the avoidance of doubt includes Cash Collateral (the **"Prepetition First Lien Collateral"**). As of the Petition Date, (I) the Prepetition First Liens (w) are valid, binding, enforceable, and perfected Liens, (x) were granted to, or for the benefit of, the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value, (y) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the lien subordination contemplated herein), and (z) are subject

and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below), and (C) valid, perfected and unavoidable Liens permitted under the applicable Prepetition First Lien Loan Documents, but only to the extent that such Liens are permitted by the applicable Prepetition First Lien Loan Documents to be senior to or *pari passu* with the applicable Prepetition First Liens, and (II) (x) the Prepetition First Lien Indebtedness constitutes legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition First Lien Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no setoffs, recoupments, offsets, defenses or counterclaims to any of the Prepetition First Lien Indebtedness exists, and (z) no portion of the Prepetition First Lien Indebtedness or any payments made to any or all of the Prepetition First Lien Secured Parties is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii)    <u>Prepetition Intercreditor Agreement; Subordination of Prepetition Note Indebtedness to Prepetition First Lien Indebtedness</u>. Holdings, Borrower, the Prepetition First Lien Administrative Agent and the Prepetition Second Lien Administrative Agent (as defined below) are parties to that certain Intercreditor Agreement dated as of January 22, 2007 (Docket No. 41) (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the "**Prepetition Intercreditor Agreement**"), which sets forth subordination, intercreditor and other provisions governing the relative priorities of Prepetition First Lien Credit Facility and the Prepetition Second Lien Credit Facility (as defined below)  The Debtors admit, stipulate and agree that the Prepetition Intercreditor Agreement was entered into in good faith and is fair and reasonable to the parties thereto and enforceable in accordance with the terms thereof.  Pursuant

9

to the Prepetition Indenture, the Prepetition Note Indebtedness is subordinated in right of payment to the Prepetition First Lien Indebtedness.

(iv)   <u>Release of Claims</u>.   Subject to the reservation of rights set forth in Paragraph 6 below, each Debtor and its estate shall be deemed to have waived, discharged and released the Prepetition First Lien Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors and employees (all of the foregoing, the "**Prepetition First Lien Secured Party Releasees**") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment or other offset rights against any and all of the Prepetition First Lien Secured Party Releasees, whether arising at law or in equity, including, without limitation, (I) any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, and (II) any right or basis to challenge or object to the amount, validity or enforceability of the Prepetition First Lien Indebtedness, or the validity, enforceability, priority or non-avoidability of the Prepetition First Liens securing the Prepetition First Lien Indebtedness.

(v)   <u>Prepetition First Lien Indebtedness Oversecured</u>.   The aggregate value of the Prepetition First Lien Collateral exceeds the aggregate amount of the Prepetition First Lien Indebtedness, and accordingly, the Prepetition First Lien Secured Parties' respective claims in respect of the Prepetition First Lien Indebtedness are allowable in full as secured claims.

E.   **Prepetition Second Lien Credit Facility and Prepetition Note Indebtedness**.

(i)   <u>Prepetition Second Lien Credit Facility</u>.   As of the Petition Date, True Temper Sports as borrower, and Holdings and certain wholly-owned subsidiaries of True Temper Sports, as guarantor[s], the financial institutions parties thereto from time to time as

lenders (the **"Prepetition Second Lien Lenders"**), and Law Debenture Trust Company of New York, as administrative agent for the Prepetition Second Lien Lenders (in such capacity, and including any successor agents, the **"Prepetition Second Lien Administrative Agent"**) and as collateral agent for the Prepetition Second Lien Lenders (in such capacity, and including any successor agents, the **"Prepetition Second Lien Collateral Agent"** and together with the Prepetition Second Lien Administrative Agent, collectively, the **"Prepetition Second Lien Agents"** and together with the Prepetition Second Lien Lenders and any other documentation agent, administrative agent, collateral agent, co-agent and other agents for the Prepetition Second Lien Lenders in respect of the Prepetition Second Lien Credit Facility, collectively, the **"Prepetition Second Lien Secured Parties"** and together with the Prepetition First Lien Secured Parties, collectively, the **"Prepetition Secured Parties"**; the Prepetition First Lien Agents and Prepetition Second Lien Agents, collectively, the **"Prepetition Agents"**), were parties to that certain Credit Agreement, dated as of January 22, 2007 (Docket No. 41) (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the **"Prepetition Second Lien Credit Agreement,"** and together with the other Loan Documents (as defined in the Prepetition Second Lien Credit Agreement), in each case as amended, restated, supplemented or otherwise modified prior to the Petition Date, the **"Prepetition Second Lien Loan Documents"** and together with the Prepetition First Lien Loan Documents, collectively, the **"Prepetition Loan Documents"**; the credit facility contemplated by the Prepetition Second Lien Credit Agreement, the **"Prepetition Second Lien Credit Facility"** and together with the Prepetition First Lien Credit Facility, the **"Prepetition Credit Facilities"**). The Prepetition Second Lien Secured Parties assert that as of the Petition Date, the aggregate outstanding principal amount of the loans, letters of credit and other Obligations (as defined in the Prepetition

CH\1129761.6

Second Lien Credit Agreement) arising under the Prepetition Second Lien Loan Documents was no less than approximately $45 million plus all accrued and unpaid interest, costs, expenses, fees (including reimbursable attorney and other advisor fees and expenses), other charges (in each case, to the extent reimbursable under the Prepetition Second Lien Loan Documents) and other obligations owing to the Prepetition Second Lien Secured Parties or affiliates thereof (all Obligations under, and as defined in the Prepetition Second Lien Credit Agreement, together with any other amounts owing by the applicable Debtors under the Prepetition Second Lien Loan Documents, collectively, the **"Prepetition Second Lien Indebtedness"**).

(ii)    <u>Prepetition Second Liens and Prepetition Second Lien Collateral</u>. The Prepetition Second Lien Secured Parties assert that the Prepetition Second Lien Indebtedness is secured by Liens granted to, or for the benefit of, the Prepetition Second Lien Secured Parties (the **"Prepetition Second Liens"** and together with the Prepetition First Liens, the **"Prepetition Liens"**) on certain personal and real property of certain Debtors, as further described and defined in the Prepetition Second Lien Loan Documents, which for the avoidance of doubt includes Cash Collateral (the **"Prepetition Second Lien Collateral"** and together the Prepetition First Lien Collateral, collectively, the **"Prepetition Collateral"**).

(iii)    <u>Prepetition Indenture and Prepetition Notes</u>.    True Temper Sports, as issuer, PRC, as guarantor, and The Bank of New York as indenture trustee (the **"Prepetition Indenture Trustee"**) are parties to that certain Indenture dated as of March 15, 2004 (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the **"Prepetition Indenture"**) pursuant to which True Temper Sports issued those certain 8 3/8% Senior Subordinated Notes due 2011 (together with all other Notes as defined in the Prepetition Indenture, collectively, the **"Prepetition Notes"** and together with the Prepetition Indenture and

CH\1129761.6

other agreements, documents, notes, certificates and other instruments executed and/or delivered with, to, or in favor of any or all of the Prepetition Note Parties, collectively, the "**Prepetition Note Documents**"; the holders of the Prepetition Notes, collectively, the "**Prepetition Noteholders**" and together with the Prepetition Indenture Trustee, the "**Prepetition Note Parties**"). The Prepetition Note Parties assert that as of the Petition Date, the aggregate outstanding principal amount of Notes was approximately $125 million plus all accrued and unpaid interest, costs, expenses, fees (including reimbursable attorney and other advisor fees and expenses), other charges (in each case, to the extent reimbursable under the Prepetition Note Documents) and other obligations owing to the Prepetition Note Parties or affiliates thereof (all obligations and indebtedness under the Prepetition Note Documents, collectively, the "**Prepetition Note Indebtedness**"). The Prepetition Note Indebtedness is unsecured.

F.    **Findings Regarding the DIP Facilities**.

(i)    Need for Postpetition Financing. The Debtors have an immediate need to obtain the DIP Facilities and use Cash Collateral, among other things, to permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operation needs. The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facilities is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(ii)    No Credit Available on More Favorable Terms. The Debtors have been and continue to be unable to obtain financing on more favorable terms from sources other than the DIP Secured Parties under the DIP Loan Documents. The Debtors are unable to obtain

adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors (i) granting to the DIP Secured Parties the rights, remedies, privileges, benefits and protections provided herein and in the DIP Loan Documents, including, without limitation, the DIP Liens and the DIP Super-Priority Claims (as defined below) and (ii) allowing the Prepetition First Lien Lenders to provide Roll Up DIP Loans on the terms set forth herein and in the DIP Loan Documents (all of the foregoing described in clauses (i) and (ii) above, including the DIP Liens and the DIP Super-Priority Claims, collectively, the "**DIP Protections**").

G.    <u>**Adequate Protection for Prepetition Secured Parties**</u>. The Prepetition Agents have negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses. The Prepetition Agents for their respective Prepetition Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, for the period through the Cash Collateral Termination Date (as defined below), subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 363(m) of the Bankruptcy Code. All of the Prepetition Secured Parties are entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any Diminution in Value (as defined below). Based on the DIP Motion and on the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements and use of the Cash Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the Prepetition Agents' consent thereto. Each of the

Prepetition First Lien Agent and the Prepetiton First Lien Lenders consented to the entry of this Final Order and relief provided herein. Pursuant to the PSA (as defined below), Prepetition Second Lien Lenders holding approximately 87% in aggregate amount of claims in respect of the Prepetition Second Lien Indebtedness consented to the entry of this Final Order and the relief provided herein, and pursuant to the terms of the Prepetition Second Lien Credit Agreement, the consents of such Prepetition Second Lien Lenders are binding on all Prepetition Second Lien Lenders. With respect to those Prepetition Secured Parties that have not consented to the entry of this Final Order, the prepetition liens and security interests of such parties are adequately protected pursuant to the terms this Final Order.

H.  **Section 552.**  In light of the subordination of their Liens and super-priority administrative claims to (i) the Carve-Out in the case of the DIP Secured Parties, and (ii) the Carve-Out and the DIP Liens in the case of the Prepetition Secured Parties, each of the DIP Secured Parties and the Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

I.  **Business Judgment and Good Faith Pursuant to Section 364(e).**

(i)  The DIP Secured Parties have indicated a willingness to provide postpetition secured financing via the DIP Facilities to the Borrower in accordance with the DIP Loan Documents, the Interim Order and this Final Order.

(ii)  The terms and conditions of the DIP Facilities (including the Roll Up DIP Facility) pursuant to the DIP Loan Documents, the Interim Order and this Final Order, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

15

(iii)     The DIP Facilities and DIP Loan Documents were negotiated in good faith and at arms' length among the Debtors and the DIP Secured Parties with the assistance and counsel of their respective advisors, and all of the DIP Obligations (including the Roll Up DIP Loans) shall be deemed to have been extended by the DIP Secured Parties and their affiliates for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Liens, the DIP Super-Priority Claims and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event the Interim Order, this Final Order or any other order or any provision hereof or thereof is vacated, reversed, amended or modified, on appeal or otherwise.

J.     **Relief Essential; Best Interest**.  For the reasons stated above, the Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules.  Absent granting the relief set forth in this Final Order, the Debtors' estates and their ability to successfully reorganize will be immediately and irreparably harmed. Consummation of the DIP Facilities and authorization of the use of Cash Collateral in accordance with this Final Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates consistent with their fiduciary duties.

**NOW, THEREFORE**, on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Prepetition Secured Parties and the DIP Secured Parties to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.    **Motion Granted**.  The DIP Motion is granted in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Documents.  Any objections to the DIP Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.    **DIP Loan Documents and DIP Protections**.

(a)    Approval of DIP Loan Documents.  The Debtors are expressly and immediately authorized to establish the DIP Facilities (to the extent any such DIP Facilities have not been established pursuant to authorization in the Interim Order), to execute, deliver and perform under the DIP Loan Documents (to the extent any such DIP Loan Documents have not been executed, delivered or performed pursuant to authorization in the Interim Order) and to incur the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Loan Documents (including, without limitation, the conversion of $80 million of the Prepetition First Lien Indebtedness to Roll Up DIP Loans), and to execute, deliver and perform under all other instruments, certificates, agreements and documents (to the extent any such instruments, certificates, agreements and documents have not been executed, delivered or performed pursuant to authorization in the Interim Order) which may be required or necessary for the performance by the applicable Debtors under the DIP Facilities and the creation and perfection of the DIP Liens described in, and provided for, by this Final Order, the Interim Order and the DIP Loan Documents.  The Debtors are hereby authorized, and upon execution of the DIP Credit Agreement, directed to do and perform all acts, pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents, the Interim Order and this Final Order, including, without limitation, all closing fees, administrative fees, commitment fees, letter of credit fees and

17

reasonable attorneys', financial advisors' and accountants' fees and disbursements arising under the DIP Loan Documents, the Interim Order and this Final Order, which amounts shall not be subject to further approval of this Court and shall be non-refundable; provided, however, that the payment of the fees and expenses of the Lender Professionals (as defined below) shall be subject to the provisions of Paragraph 20(a). Upon their execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms. Each officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

(b)     Authorization to Incur DIP Obligations.   To enable the Debtors to continue to operate their business, and subject to the terms and conditions of this Final Order and the DIP Loan Documents, including, without limitation, the budget-related covenants contained in the DIP Credit Agreement (as the same may be modified, supplemented or updated from time to time, the "**Budget Covenants**"), the Borrower is hereby authorized to (i) borrow under the Revolving DIP Facility in an aggregate outstanding principal amount not to exceed $10,000,000, and (ii) incur the Roll Up DIP Loans.   All DIP Obligations of the Borrower shall be unconditionally guaranteed by each of the Guarantors on a joint and several basis, in each case as further provided in the DIP Loan Documents.

(c)     Application of DIP Facilities and DIP Collateral Proceeds. The proceeds of the DIP Facilities and DIP Collateral (in each case net of any amounts used to pay fees, costs and expenses pursuant to, and in accordance with, the DIP Loan Documents, the Interim Order and this Final Order) shall be used in accordance with the terms and conditions of the DIP Loan

18

Documents, the Interim Order and this Final Order, including, without limitation, the Budget Covenants, solely for (i) working capital; (ii) other general corporate purposes of the Debtors (including intercompany loans and investments solely to the extent permitted by the DIP Loan Documents, the Interim Order and this Final Order); (iii) payment of any related transaction costs, fees, costs and expenses; and (iv) the costs of administration of the Cases. Without limiting the foregoing, the Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of the Plan (as defined below) or any other Chapter 11 plan or plans with respect to any of the Debtors, except with respect to the prepetition obligations as set forth in the Interim Order, this Final Order or as other provided in the First Day Orders (as defined in the DIP Credit Agreement), (which First Day Orders shall be in form and substance acceptable to the DIP Agents) or as otherwise provided in the DIP Credit Agreement. A copy of the Initial Approved Budget is attached to the Interim Order as Exhibit A.

(d)     <u>Conditions Precedent</u>. The DIP Secured Parties shall have no obligation to make any DIP Loan or other extension of credit or financial accommodation in respect of the DIP Facilities or otherwise unless and until all conditions precedent to the making of any such DIP Loan or other extension of credit or financial accommodation under the DIP Loan Documents, the Interim Order and this Final Order have been satisfied in full or waived by the requisite DIP Secured Parties in accordance with the DIP Loan Documents, the Interim Order and this Final Order.

(e)     <u>DIP Liens</u>. Effective as of the Petition Date, and subject to the relative priorities among the DIP Facilities, the Adequate Protection Super-Priority Claims and Adequate Protection Replacement Liens, and the Prepetition Credit Facilities, in each case as set forth more fully in this Final Order (including in Paragraphs 2(e) and (f)), the DIP Administrative

Agents (as provided in the DIP Loan Documents and for itself and the ratable benefit of the other DIP Secured Parties) are hereby granted the following Liens (which, subject to the provisions of Paragraph 6 hereof with respect to the DIP Obligations in respect of the Roll Up DIP Facility, shall immediately, and without any further action by any Person, be valid, binding, permanent, perfected, continuing, enforceable and non-avoidable) on all property of the Debtors, now existing or hereinafter acquired, including, without limitation, all cash and cash equivalents (whether maintained with any of the DIP Agents or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries (subject to the restriction set forth below), tax refunds, insurance proceeds, commercial tort claims, membership interests and other equity ownership interests, in joint ventures (collectively, the **"Joint Venture Entities"**) (subject to the restrictions set forth below), all other Collateral (as defined in the DIP Credit Agreement) and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing; provided, however, that notwithstanding any provision herein or in any DIP Loan Document to the contrary, no Debtor organized under U.S. law shall be required to pledge in excess of 65% of the voting capital stock of its direct foreign

subsidiaries or any of the capital stock of its indirect foreign subsidiaries (all of the foregoing collateral collectively referred to as the "**DIP Collateral**," and all such Liens granted to the DIP Administrative Agents as provided in the DIP Loan Documents and for the ratable benefit of the DIP Secured Parties pursuant to this Final Order, the Interim Order and the DIP Loan Documents, the "**DIP Liens**"):

(I)     pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, non-avoidable, first priority Lien on all unencumbered DIP Collateral, including, without limitation, the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any other avoidance or similar action under the Bankruptcy Code or similar state law and the proceeds thereof ("**Avoidance Actions**"), whether received by judgment, settlement or otherwise;

(II)    pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior Lien upon all DIP Collateral that is subject to (x) valid, enforceable, non-avoidable and perfected Liens in existence on the Petition Date that, after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens, (y) Liens in favor of AFCO Premium Credit LLC ("**AFCO**") with respect to any and all unearned premiums and dividends (but not loss payments) which may become payable under the financed insurance policies listed on insurance premium financing agreement between the Debtors and AFCO, and (z) valid, enforceable and non-avoidable Liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens, other than, in the case of clause (II)(x) or (II)(z), Liens which are expressly stated to be primed by the Liens to be granted to the DIP Administrative Agents described in clause (III) below (subject to such exception, the "**Prepetition Senior Liens**"); and

(III)   pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming Lien on all DIP Collateral (including, without limitation, Cash Collateral) that is senior to (x) the existing respective Liens in favor of the applicable Prepetition Secured Parties and securing the Prepetition First Lien Indebtedness or the Prepetition Second Lien Indebtedness, as applicable or (y) any existing Liens in favor of any other person or entity (other than the Prepetition Senior Liens), including, without

limitation, all Liens junior to the Prepetition First Liens or the Prepetition Second Liens (the Liens referenced in clauses (x) and (y), collectively, the "**Primed Liens**"), which Primed Liens, together with any Liens granted on or after the Petition Date to provide adequate protection in respect of any Primed Liens, shall be primed by and made subject and subordinate to the perfected first priority senior priming DIP Liens.

(f)     DIP Lien Priority.  Notwithstanding anything to the contrary contained in this Final Order, the Interim Order or the other DIP Loan Documents, and for the avoidance of doubt, the DIP Liens granted to the DIP Administrative Agents for the DIP Secured Parties shall in each and every case be first priority senior Liens that (i) are subject only to the Prepetition Senior Liens and to the extent provided in the provisions of this Final Order, the Interim Order and the DIP Loan Documents, shall also be subject to the Carve-Out, and (ii) except as provided in clause (i), are senior to all other prepetition and postpetition Liens of any other person or entity (including, without limitation, the Primed Liens and the Adequate Protection Replacement Liens).  The DIP Liens and the DIP Super-Priority Claims (i) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (ii) shall not be subordinate to, or pari passu with, (x) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, or (y) any intercompany or affiliate Liens of the Debtors, and (iii) subject to the provisions of Paragraph 6 hereof, shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "**Successor Case**"), and/or upon the dismissal of any of the Cases.

(g)     Relative Lien Priority of DIP Facilities.  Notwithstanding anything to the contrary herein, all Letters of Credit (as defined in Prepetition First Lien Credit Agreement) shall

be deemed to constitute Letters of Credit, as defined in, and as issued in connection with the DIP Credit Agreement, and accordingly, from and after the Petition Date all L/C Exposure in respect of such Letters of Credit shall constitute part of the DIP Obligations in respect of the Revolving DIP Credit Facility and be ratably allocable to the Revolving DIP Lenders in accordance with the terms of the DIP Loan Documents, and upon closing of the DIP Facilities, none of the Prepetition First Lien Lenders and Roll Up DIP Lenders shall have any further liability with respect to such L/C Exposure; provided, however, that nothing herein shall alter any such parties' obligations as the issuer of any Letters of Credit. Notwithstanding anything to the contrary herein, the relative rights and priorities of the Revolving DIP Secured Parties and the Roll Up DIP Secured Parties in respect of the DIP Collateral shall be as provided in the DIP Credit Agreement.

(h)     Enforceable Obligations. The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the applicable Debtors, which DIP Obligations shall be enforceable against such Debtors, their estates and any successors thereto (including, without limitation, any trustee or other estate representative in any Successor Case), and their creditors, in accordance with their terms. Subject to the provisions of Paragraph 6 hereof with respect to the DIP Obligations in respect of the Roll Up DIP Facility, no obligation, payment, transfer or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, the Interim Order or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 547, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment,

offset, recharacterization, subordination (whether equitable, contractual or otherwise) counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(i)    <u>Super-Priority Administrative Claim Status</u>. In addition to the DIP Liens granted herein, effective as of the Petition Date, subject to Paragraph 15 hereof, all of the DIP Obligations shall constitute allowed super-priority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out to the extent specifically provided in the DIP Loan Documents, the Interim Order and this Final Order, over all administrative expense claims, adequate protection and other diminution claims (including the Adequate Protection Super-Priority Claims), unsecured claims and all other claims against the applicable Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment (the "**DIP Super-Priority Claims**"). Subject to Paragraph 15 hereof, the DIP Super-Priority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each other Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, 100% of the capital stock of any first tier foreign subsidiary of any Debtor and all Avoidance Actions. Other than as provided in the DIP Credit Agreement, the Interim Order and this Final Order with respect to the Carve-Out, no costs or

expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Liens and the DIP Super-Priority Claims or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder. The DIP Super-Priority Claims granted hereunder to the Roll Up DIP Secured Parties shall be immediately junior in priority and subject to the DIP Super-Priority Claims of the Revolving DIP Secured Parties.

(j)     Events of Default for Breach of Plan Support Agreement and Plan Confirmation Timetable.   Any breach by the Debtors of (i) their covenants and other undertakings in that certain Equity Commitment and Plan Support Agreement dated as of September 29, 2009 (the "**PSA**") by and among the Debtors, certain investors and certain Prepetition Secured Parties or (ii) the timetable and other covenants set forth in Section 5.13 of the DIP Credit Agreement for the filing, confirmation and consummation of the Plan (as defined in the PSA) shall constitute an immediate Event of Default under the DIP Credit Agreement.

3.     **Authorization to Use Cash Collateral and Proceeds of DIP Facilities.**

Subject to the terms and conditions of this Final Order, the Interim Order and the DIP Loan Documents, including without limitation, the Budget Covenants, (a) each applicable Debtor is authorized to use proceeds of DIP Loans from and after the Closing Date (as defined in the DIP Credit Agreement), and (b) each applicable Debtor is authorized to use all Cash Collateral, and each Debtor shall be enjoined and prohibited from any time using proceeds of DIP Loans or Cash Collateral except in accordance with the terms and conditions of this Final Order, the Interim Order and the DIP Loan Documents. The Prepetition Secured Parties are directed to promptly turn over to the Revolving DIP Administrative Agent until Payment in Full of the

Revolving DIP Obligations and then to the Roll Up DIP Agent all Cash Collateral received or held by them that had not been applied to the Prepetition First Lien Indebtedness or Prepetition Second Lien Indebtedness, as applicable, prior to the Petition Date; provided, however, that the Prepetition Secured Parties are granted adequate protection for any aggregate postpetition Diminution in Value of their respective prepetition interests in the applicable Prepetition Collateral as hereinafter set forth. The applicable Debtors' right to use proceeds of DIP Loans, DIP Collateral, Prepetition Collateral and Cash Collateral shall terminate (i) automatically upon the occurrence of the Maturity Date, or (ii) immediately upon notice to such effect by the applicable DIP Administrative Agent to the Debtors after the occurrence and during the continuance of an Event of Default (the applicable termination date specified in clause (i) or (ii) above, the "**Cash Collateral Termination Date**").

4. **Adequate Protection for Prepetition Secured Parties**. As adequate protection for the respective interests of the Prepetition Secured Parties in the respective Prepetition Collateral (including Cash Collateral) for, and in an aggregate amount equal to, the diminution in value (collectively, "**Diminution in Value**") of such interests from and after the Petition Date, calculated in accordance with section 506(a) of the Bankruptcy Code, whether or not resulting from the use, sale or lease by the Debtors of the applicable Prepetition Collateral (including Cash Collateral), the granting of the DIP Liens, the subordination of the Prepetition Liens thereto and to the Carve-Out, the imposition or enforcement of the automatic stay of section 362(a) or otherwise, the Prepetition Secured Parties shall receive the following adequate protection (collectively referred to as the "**Prepetition Secured Parties' Adequate Protections**"):

(a) Adequate Protection Replacement Liens. Solely to the extent of any aggregate postpetition Diminution in Value of the prepetition interests of the Prepetition First

Lien Secured Parties or the Prepetition Second Lien Secured Parties, as applicable, in the applicable Prepetition Collateral, the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties are hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, senior replacement Liens upon all of the DIP Collateral, including any Avoidance Actions (the adequate protection replacement liens granted to the Prepetition First Lien Secured Parties, the "**First Priority Adequate Protection Replacement Liens**" and the adequate protection replacement liens granted to the Prepetition Second Lien Secured Parties, the "**Second Priority Adequate Protection Replacement Liens**," and together with the First Priority Adequate Protection Replacement Liens, collectively, the "**Adequate Protection Replacement Liens**"), which Adequate Protection Replacement Liens on such DIP Collateral shall be subject and subordinate to the DIP Liens, the Permitted Senior Liens, and the payment of the Carve-Out to the extent expressly provided in the DIP Loan Documents, the Interim Order and this Final Order, and shall have the relative priorities set forth in Paragraph 4(g).

(b)     Adequate Protection Super-Priority Claims.  Solely to the extent that their respective Adequate Protection Replacement Liens have failed to provide adequate protection, and in such event solely to the extent of any applicable Diminution in Value not adequately protected by such Adequate Protection Replacement Liens, the Prepetition First Lien Secured Parties and Prepetition Second Lien Secured Parties are hereby granted, subject to the payment of the DIP Super-Priority Claims and the Carve Out to the extent provided herein and in the DIP Loan Documents, allowed super-priority administrative claims (the adequate protection super-priority claims granted to the Prepetition First Lien Secured Parties, the "**First Priority Adequate Protection Super-Priority Claims**" and the adequate protection super-priority claims

CH\1129761.6

granted to the Prepetition Second Lien Secured Parties, the "**Second Priority Adequate Protection Super-Priority Claims**," and together with the First Priority Adequate Protection Super-Priority Claims, collectively, the "**Adequate Protection Super-Priority Claims**") as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the DIP Super-Priority Claims and payable from and having recourse to all to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, 100% of the capital stock of any first tier foreign subsidiary of any Debtor and all Avoidance Actions; provided, however, that (i) the respective Adequate Protection Super-Priority Claims of the Prepetition Secured Parties shall have the relative priorities set forth in Paragraph 4(g) hereof, and (ii) the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection Super-Priority Claims unless and until (x) all DIP Obligations have indefeasibly been paid in full in cash or, in the case of letters of credit or other DIP Obligations which survive termination, cash collateralized, in each case, in accordance with the DIP Loan Documents, the Interim Order and this Final Order (or, in the case of the Roll Up DIP Facility, provided the treatment set forth in the Plan, if confirmed and effective, or as otherwise allowed under section 1129(a) of the Bankruptcy Code, this Final Order, the Interim Order and the DIP Loan Documents) and (y) all Revolving Credit Commitments under the DIP Loan Documents have been irrevocably terminated (the conditions described in clauses (ii)(x) and (ii)(y), collectively, "**Paid in Full**" or "**Payment in Full**") and (iii) the Adequate Protection Super-Priority Claims granted to the Prepetition First Lien Secured Parties or the Prepetition Second Lien Secured Parties may be impaired pursuant to the Plan or any other Chapter 11 plan of reorganization in the Cases with the vote of the applicable class of the holders of such claims that satisfies the requirements of Section 1126 of the Bankruptcy Code. Subject to the relative

CH\1129761.6

priorities set forth above, the Adequate Protection Super-Priority Claims against each Debtor shall be against each Debtor on a joint and several basis.

(c) <u>Adequate Protection Payments</u>. In addition to the foregoing, the Prepetition First Lien Secured Parties shall receive from the Debtors, promptly after receipt of invoices therefor, additional adequate protection in the forms of (i) immediate cash payment of all accrued and unpaid prepetition interest (at the applicable default rate of interest) and all accrued unpaid reimbursable fees, costs and expenses, in each case as provided for, and to the extent permitted, in the Prepetition First Lien Loan Documents; and (ii) cash payment as and when due of all interest (at the applicable default rate of interest) and, subject to the provisions of Paragraph 20(a) hereof, all reimbursable fees, costs and expenses (including, without limitation, the fees and expenses of counsel and the fees, expenses and transaction fee for financial advisors), in each case as provided for, and to the extent permitted, in the Prepetition First Lien Loan Documents and retention agreements permitted thereunder, during the period from and including the Petition Date through and including the Cash Collateral Termination Date, and without the need to file (or for the applicable professionals to file) any applications for payment of same. In addition to the foregoing, subject to the provisions of Paragraph 20(a) hereof, the Prepetition Second Lien Secured Parties shall receive cash payment as and when due of all reimbursable fees, costs and expenses of the Second Lien Agent in an aggregate amount not to exceed $25,000, in each case as provided for, and to the extent permitted, in the Prepetition Second Lien Loan Documents and retention agreements permitted thereunder, during the period from and including the Petition Date through and including the Cash Collateral Termination Date and without the need to file (or for the applicable professionals to file) any applications for payment of same (all payments referenced in this sentence and the immediately preceding

sentence, collectively, the "**Adequate Protection Payments**"). The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential or sensitive information and subject to a full reservation of all applicable privileges and work product doctrine).

(d)     Monitoring of Prepetition Collateral.  The Prepetition First Lien Agents shall be permitted to retain expert consultants and financial advisors at the expense of the Debtors, which consultants and advisors shall be given reasonable access for purposes of monitoring the businesses of the Debtors and the value of the DIP Collateral and/or Prepetition Collateral.

(e)     Financial Reporting.  The Debtors shall concurrently provide the Prepetition Agents with copies of all written reports that are provided to the DIP Agents pursuant to the DIP Loan, the Interim Order and this Final Order.

(f)     Right to Seek Additional Adequate Protection.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.  However, any Prepetition Secured Party may request further or different adequate protection, and the Debtors or any other party in interest may contest any such request; provided that any such further or different adequate protection shall at all times be subordinate and junior to the claims and Liens of the DIP Secured Parties granted under this Final Order, the Interim Order and the DIP Loan Documents and that any such further or different adequate protection granted to the Prepetition Second Lien Secured Parties shall at all times be subordinate and junior to the claims

and Liens of the Prepetition First Lien Secured Parties granted under this Final Order, the Interim Order and the Prepetition First Lien Loan Documents.

(g) <u>Priorities Among Prepetition Secured Parties</u>. Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the Prepetition Secured Parties (including, without limitation, the relative priorities and rights of the Prepetition Secured Parties with respect to the Prepetition Secured Parties' Adequate Protections and the Adequate Protection Liens), (i) the Second Priority Adequate Protection Replacement Liens and the Second Priority Adequate Protection Super-Priority Claims shall be immediately junior in priority and subject to the First Priority Adequate Protection Replacement Liens and the First Priority Adequate Protection Replacement Liens, respectively, and (ii) all other such relative priorities and rights shall continue to be governed by the Prepetition Loan Documents and the Prepetition Intercreditor Agreement.

(h) <u>Consent to Priming and Adequate Protection</u>. Pursuant to the PSA, the Prepetition First Lien Administrative Agent and the requisite Prepetition First Lien Lenders and the requisite Prepetition Second Lien Lenders, in each case, on behalf of all Prepetition First Lien Secured Parties or all Prepetition Second Lien Secured Parties, as the case may be, consent to the adequate protection and the priming provided for herein; <u>provided</u>, <u>however</u>, that the consent of the Prepetition Secured Parties to the priming of their Prepetition Liens, the use of Cash Collateral, and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Final Order and such consent shall not be deemed to extend to any other replacement financing or debtor in possession financing other than the DIP Facilities provided under the DIP Loan Documents; and <u>provided</u>, <u>further</u>, that such consent shall be of no force and effect in the event this Final Order is not entered and the DIP Loan Documents and

DIP Facilities as set forth herein are not approved; and provided, further, that in the event of the occurrence of the Maturity Date, nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing concerning the continued use of Prepetition Collateral (including Cash Collateral) by the Debtors.

5.     **Automatic Postpetition Lien Perfection**.  This Final Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the DIP Liens and the Adequate Protection Replacement Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the DIP Liens and the Adequate Protection Replacement Liens or to entitle the DIP Liens and the Adequate Protection Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agents and Prepetition Agents (in the latter case, solely with respect to the Adequate Protection Replacement Liens) may, each in their sole discretion, file financing statements, mortgages, security agreements, notices of Liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date. The applicable Debtors shall execute and deliver to the DIP Agents and/or the Prepetition Agents, as applicable, all such financing statements, mortgages, notices and other documents as such parties may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Adequate Protection Replacement Liens, as applicable, granted pursuant hereto.   Without limiting the foregoing, each of the DIP Agents and Prepetition Agents, each in its discretion, may

file (to the extent not filed pursuant to authorization of the Interim Order) a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order. To the extent that any Prepetition Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Prepetition Loan Document, each DIP Administrative Agent shall also be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Prepetition Loan Document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Secured parties in accordance with the DIP Loan Documents and second, subsequent to indefeasible Payment in Full of all DIP Obligations, for the benefit of the Prepetition Secured Parties. Each Prepetition Agent shall serve as agent for the DIP Administrative Agents for purposes of perfecting their respective Liens on all DIP Collateral that is of a type such that perfection of a Lien therein may be accomplished only by possession or control by a secured party.

6.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. Subject to the reservation of rights set forth in this Paragraph, the Debtors' Stipulations shall be binding upon the Debtors in all circumstances. The Debtors' Stipulations shall be binding upon each other party in interest, unless any such other party in interest other than the Debtors (or if the Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Cases) commences,

33

by the earlier of (x) the date specified in the applicable Local Rules or (y) the initial deadline set by the Court for objections to the confirmation of any plan of reorganization for the Debtors (such time period established by the earlier of clauses (x) and (y) shall be referred to as the "**Challenge Period**," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "**Challenge Period Termination Date**"), (i) a contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, findings or releases included in the Debtors' Stipulations, or (ii) a contested matter or adversary proceeding against any or all of the Prepetition First Lien Secured Parties in connection with or related to the Prepetition First Lien Indebtedness (including, without limitation, the roll-up of $80 million such Prepetition First Lien Indebtedness into the Roll Up DIP Loans), or the actions or inactions of any of the Prepetition First Lien Secured Parties arising out of or related to the Prepetition First Lien Indebtedness or otherwise, including, without limitation, any claim against the Prepetition First Lien Secured Parties in the nature of a "lender liability" causes of action, setoff, counterclaim or defense to the Prepetition First Lien Indebtedness (including but not limited to those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition First Lien Secured Parties) (the objections, challenges, actions and claims referenced in clauses (a)(i) and (ii), collectively, the "**Claims and Defenses**"); provided that as to the Debtors, for themselves and not their estates, all such Claims and Defenses are irrevocably waived and relinquished as of the Petition Date. If no Claims and Defenses have been timely asserted in any such adversary proceeding or contested matter, then, upon the Challenge Period Termination Date, and for all purposes in these Cases and any Successor Case, (i) all payments made to the Prepetition First Lien Secured Parties pursuant to

34

this Final Order or otherwise shall not be subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance, (ii) any and all such Claims and Defenses by any party in interest shall be deemed to be forever released, waived and barred, (iii) the Prepetition First Lien Indebtedness shall be deemed to be an allowed secured claim within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations, including the release provisions therein, shall be binding on all parties in interest. Notwithstanding the foregoing, to the extent any Claims and Defenses are timely asserted in any such adversary proceeding or contested matter, (i) the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on, if applicable, any chapter 7 trustee in any Successor Case, and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such adversary proceeding or contested matter, and (ii) any portion of the Debtors' Stipulations or other provisions in clauses (i) through (iv) in the immediately preceding sentence that is the subject of a timely field Claim and Defense shall become binding and preclusive on, if applicable, any chapter 7 trustee in any Successor Case, and on any other party in interest to the extent set forth in any order of the Court resolving such Claim and Defense. The Challenge Period in respect of the Prepetition First Lien Credit Facility may be extended by written agreement of the Prepetition First Lien Agents in their sole discretion or pursuant to Court order for cause shown. Nothing in this Final Order vests or confers on any person or entity standing or authority to pursue any cause of action belonging to any or all of the Debtors or their estates, including, without limitation, any Claim and Defense or other claim against any Prepetition First Lien Secured Parties or the DIP Secured Parties.

35

7.  **Carve Out**.  Subject to the terms and conditions contained in this Paragraph 7, each of the DIP Liens, DIP Super-Priority Claims, Prepetition Liens, Adequate Protection Replacement Liens and Adequate Protection Super-Priority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below) solely in the event of the delivery of a Carve-Out Trigger Notice (as defined below) after the occurrence and during the continuance of an Event of Default under, and as defined in, the DIP Loan Documents:

(a)  For purposes of this Final Order, "**Carve-Out**" means (i) all unpaid fees required to be paid in these Cases to the clerk of the Bankruptcy Court and to the office of the United States Trustee under 28 U.S.C. §1930(a), whether arising prior to or after the delivery of the Carve-Out Trigger Notice; (ii) (x) all unpaid fees and expenses incurred by professionals retained by the Debtors in these Cases (collectively, the "**Professionals**") that are incurred prior to the delivery by the applicable DIP Administrative Agent of a Carve-Out Trigger Notice (as defined below) and are allowed by the Court under sections 105(a), 330 and 331 of the Bankruptcy Code or otherwise, and that remain unpaid after application of available funds remaining in the Debtors' estates for such creditors and (y) in an aggregate amount not to exceed $500,000 (the "**Carve-Out Cap**"), all unpaid and allowed fees and expenses of Professionals that are incurred after the delivery of a Carve-Out Trigger Notice and that remain unpaid after application of available funds remaining in the Debtors' estates for such creditors (clauses (i), (ii)(x) and (ii)(y), collectively, the "**Carve-Out**").  The term "**Carve-Out Trigger Notice**" shall mean a written notice delivered by either DIP Administrative Agent to the Debtors' lead counsel, the other DIP Administrative Agent, and the U.S. Trustee appointed in these Cases, which notice may be delivered at any time following the occurrence and during the continuation of any Event

CH\1129761.6

of Default under the DIP Loan Documents, expressly stating that the Carve-Out (and the Carve-Out Cap) is invoked.

(b)    Following the delivery of the Carve-Out Trigger Notice after the occurrence and during the continuance of any Event of Default under the DIP Loan Documents, any payments actually made pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 or otherwise, to such Professionals shall (i) not be paid from the proceeds of any DIP Loan, DIP Collateral, Prepetition Collateral or Cash Collateral until such time as all retainers, if any, held by such Professionals have been reduced to zero, and (ii) in the case of any payments made on account of any fees and expenses described in clause (ii)(y) of the definition of Carve-Out, reduce the Carve-Out Cap on a dollar-for-dollar basis. So long as no Carve-Out Trigger Notice has been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. §§ 328, 330 and 331, as the same may be due and payable, and any such compensation and expenses previously paid, or accrued but unpaid, prior to the delivery of the Carve-Out Trigger Notice shall not reduce the Carve-Out or the Carve-Out Cap.

(c)    The DIP Revolving Administrative Agent shall be entitled to establish and maintain reserves against borrowing availability under the DIP Facilities on account of the Carve-Out in accordance with the terms of the DIP Credit Agreement.

(d)    Notwithstanding any provision in this Paragraph 7 to the contrary, no portion of the Carve-Out, Cash Collateral, Prepetition Collateral, DIP Collateral or proceeds of the DIP Facilities shall be utilized for the payment of professional fees and disbursements to the extent restricted under Paragraph 14 hereof.

CH\1129761.6

(e)     Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any other official or unofficial committee in these Cases, or of any other person or entity, or shall affect the right of any DIP Secured Party or any Prepetition Secured Party to object to the allowance and payment of such fees and expenses.

8.     **Waiver of Section 506(c) Claims**.  As a further condition of the DIP Facilities and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents (and their consent to the payment of the Carve-Out to the extent provided herein), no costs or expenses of administration of the Cases or any Successor Case shall be charged against or recovered from or against any or all of the DIP Secured Parties, the Prepetition First Lien Secured Parties, the DIP Collateral, the Prepetition First Lien Collateral and the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Agents or the Prepetition First Lien Agents, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Secured Parties and the Prepetition First Lien Secured Parties.

9.     **After-Acquired Property**.  Except as otherwise provided in this Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date including, without limitation, in respect of the Prepetition Credit Facilities, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date which is not subject to subordination under the Bankruptcy Code or other provisions or principles of applicable law.

10.     **Protection of DIP Secured Parties' Rights**.

(a)     Until such time that all DIP Obligations have been Paid in Full, each Prepetition Secured Party shall (i) not exercise any right or remedy relating to the DIP Collateral, including without limitation, seeking relief from the automatic stay, seeking any sale, realization upon repossession or liquidation of any property, or taking any action to foreclose upon or recover in connection with the Liens granted in respect of the Prepetition First Lien or Second Lien Credit Facilities (including, without limitation, the Prepetition Liens and the Adequate Protection Replacement Liens), or otherwise exercise remedies against any DIP Collateral, (ii) be deemed to have consented to any and all releases of DIP Collateral authorized under the DIP Loan Documents or otherwise consented to by the requisite DIP Secured Parties (provided that the Liens of the Prepetition Secured Parties attach to the proceeds of any disposition of such released DIP Collateral with the same priorities as provided herein), and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of Lien or similar instruments, or otherwise take any action to perfect their Liens on the DIP Collateral unless, solely as to this clause (iii) and solely with respect to the Adequate Protection Replacement Liens, any DIP Agent files financing statements or other documents to perfect the Liens granted pursuant to this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable Liens as of the Petition Date.

(b)     Unless the requisite DIP Secured Parties under the DIP Loan Documents shall have provided their prior written consent or all DIP Obligations have been indefeasibly Paid in Full (or will be indefeasibly Paid in Full upon entry of a final, non-appealable order approving indebtedness described in clause (ii) of this subsection (b)), there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage,

or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with (x) the DIP Liens, DIP Super-Priority Claims and other DIP Protections granted pursuant to this Final Order to the DIP Secured Parties or (y) the Prepetition First Liens, the First Priority Adequate Protection Replacement Liens, the First Priority Adequate Protection Super-Priority Claims and the other Prepetition Secured Parties' Adequate Protections granted to the Prepetition First Lien Secured Parties; or (ii) the use of Cash Collateral for any purpose other than to indefeasibly Pay in Full the DIP Obligations or as otherwise permitted in the DIP Loan Documents, the Interim Order and this Final Order.

(c)     The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records and accounts to the extent and as required by the DIP Loan Documents, (ii) cooperate, consult with, and provide to the DIP Agents all such information as required or allowed under the DIP Loan Documents or the provisions of the Interim Order or this Final Order, (iii) permit representatives of the DIP Agents such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as and to the extent required by the DIP Loan Documents, and (iv) permit representatives of the DIP Agents to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition and operations.

11.    **Cash Collection**.  Cash collections (including, but not limited to, payments from customers with respect to accounts receivable) constituting proceeds of DIP Collateral shall be directed to lock-box and/or deposit accounts ("**Cash Collection Accounts**") pursuant to blocked account agreements in form and substance acceptable to, and in favor of, any Prepetition First Lien Agent or any DIP Administrative Agent pursuant to a structure reasonably satisfactory to the DIP Agents and in compliance with the Cash Management Order (as defined below).  Upon the direction of the applicable DIP Administrative Agent at any time after the occurrence of an Event of Default, all proceeds in the Cash Collection Accounts shall be remitted to the Revolving DIP Administrative Agent until Payment in Full of the Revolving DIP Obligations and then to the Roll Up DIP Agent for application to the DIP Obligations, and the DIP Administrative Agents shall take all action that is necessary or appropriate to effectuate the foregoing.  Unless otherwise agreed to in writing by the DIP Administrative Agents, the Debtors shall maintain no accounts except those identified in any order of the Court approving the Debtors' cash management system (the "**Cash Management Order**").   The Debtors and the financial institutions where the Debtors' cash collection accounts are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit funds in such Cash Collection Accounts upon receipt of any direction to that effect from the applicable DIP Administrative Agent.   The Debtors are authorized to incur obligations and liabilities for treasury, depositary or cash management services, including without limitation, overnight overdraft services, controlled disbursement, automated clearinghouse transactions, return items, overdrafts and interstate depository network services provided on a postpetition basis by any financial institution at which any Cash Collection Account is maintained; provided, however, that (i) any Lien securing any such obligations shall be junior to the DIP Lien on the funds in the

41

cash collection accounts at such financial institution, and (ii) except to the extent otherwise required by the Court, nothing herein shall require any DIP Secured Party or Prepetition Secured Party to incur any overdrafts or provide any such services or functions to the Debtors.

12. **Disposition of DIP Collateral**. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the requisite DIP Secured Parties under the DIP Loan Documents (and no such consent shall be implied from any other action, inaction or acquiescence by any DIP Secured Party or any order of this Court), except for sales of inventory in the ordinary course of business or except as otherwise permitted in the DIP Loan Documents, the Interim Order and this Final Order and approved by the Court to the extent required under applicable bankruptcy law. Except to the extent otherwise expressly provided in the DIP Loan Documents, all proceeds from the sale, transfer, lease, encumbrance or other disposition of any DIP Collateral shall be remitted to the Revolving DIP Administrative Agent until Payment in Full of the Revolving DIP Obligations and then to the Roll Up DIP Agent for application to the DIP Obligations in accordance with the terms of the DIP Loan Documents.

13. **Events of Default**.

(a) <u>Rights and Remedies Upon Event of Default</u>. Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified, without requiring prior notice to or authorization of, this Court, to the extent necessary to permit the DIP Secured Parties to exercise (i) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under this Final Order, the Interim Order and the DIP Loan Documents other than those rights and remedies against the DIP Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default and

42

the giving of five business days' prior written notice (the **"Enforcement Notice"**) to the Debtors

(with a copy to the United States Trustee, the Prepetition Agents and the Prepetition Indenture

Trustee), all rights and remedies against the DIP Collateral provided for in any DIP Loan

Documents or applicable law (including, without limitation, the right to set off against accounts

maintained by the Debtors with any DIP Agent, any other DIP Secured Party, any Prepetition

Secured Party or any of their respective affiliates); provided, however, that notwithstanding

anything to the contrary in clause (ii) above, immediately following the giving of an

Enforcement Notice by the applicable DIP Administrative Agent; (w) the Debtors shall deliver

and cause the delivery of the proceeds of DIP Collateral to the Revolving DIP Administrative

Agent until Payment in Full of the Revolving DIP Obligations and then to the Roll Up DIP

Agent as provided in the DIP Loan Documents; (x) the applicable DIP Administrative Agent

shall apply such proceeds in accordance with the provisions of the DIP Loan Documents; (y) the

Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral other than

towards the satisfaction of the DIP Obligations and the payment of the Carve-Out, as provided

herein and in the applicable DIP Loan Documents; and (z) any obligation otherwise imposed on

any or all of the DIP Agents and the other DIP Secured Parties to provide any loan, advance or

other financial accommodation to the Debtors pursuant to the DIP Facilities shall immediately be

suspended. Following the giving of an Enforcement Notice by the applicable DIP

Administrative Agent, the Debtors shall be entitled to an emergency hearing before this Court

solely for the purpose of contesting whether an Event of Default has occurred, and section 105 of

the Bankruptcy Code may not be invoked by the Debtor or any other party in interest to restrict

or preclude any DIP Secured Party from exercising any rights or remedies set forth in this Final

Order, the Interim Order or the DIP Loan Documents. If the Debtors do not contest the right of

the DIP Secured Parties to exercise their rights and remedies based upon whether an Event of Default has occurred within such five business-day time period or if the Debtors do timely contest the occurrence of an Event of Default and the Court after notice and hearing declines to find that no such Event of Default has occurred, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such notice period.

(b)     Subject to the provisions of Paragraph 13(a), upon the occurrence of an Event of Default, the DIP Agents and the other DIP Secured Parties are authorized to exercise their rights and remedies and to proceed against any or all of the DIP Collateral under or pursuant to the DIP Loan Documents, the Interim Order, this Final Order and applicable law, including without limitation, exercising any of the Debtors' rights with respect to the Debtors' interests in the Joint Venture Entities and the Debtors' interests in leaseholds, including without limitation, selling, leasing or otherwise transferring any of the Debtors' interests in any Joint Venture Entity or leasehold notwithstanding any contractual provision that would otherwise prohibit, restrict, condition or delay any or all of the DIP Agents and the other DIP Secured Parties from taking any such action. All proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties shall be turned over to the Revolving DIP Administrative Agent until Payment in Full of the Revolving DIP Obligations and then to the Roll Up DIP Agent for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Loan Documents; provided, that in the event of the liquidation of the Debtors' estates after an Event of Default and the termination of the Revolving Credit Commitments, the unused amount of the Carve-Out shall be funded into a segregated account exclusively (i) first, from proceeds of any unencumbered assets of the Debtors, and (ii) then from Cash Collateral received by any DIP Agent subsequent to the date of termination of the

44

Revolving Credit Commitments and prior to the distribution of any such Cash Collateral to any other parties in interest.

(c)     The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Credit Agreement as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Prepetition Secured Parties and the DIP Secured Parties under the DIP Loan Documents, the DIP Facilities, the Interim Order and this Final Order, (ii) authorize the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments hereunder, and (iii) otherwise to the extent necessary to implement and effectuate the provisions of this Final Order.

14.     **Restriction on Use of Proceeds**.    Notwithstanding anything herein to the contrary, no proceeds from the DIP Facilities, DIP Collateral or proceeds thereof, Cash Collateral (including any prepetition retainer funded by the Prepetition Lenders), Prepetition Collateral or proceeds thereof, or any portion of the Carve-Out may be used by any of the Debtors, any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, or any other person, party or entity to (or to pay any professional fees and disbursements incurred in connection therewith) (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than from the DIP Secured Parties; (b) investigate (except as set forth below), assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Secured Parties, the Prepetition Secured Parties, and their respective

45

officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) any Claims and Defenses, any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any action with respect to the validity, enforceability, priority and extent of the DIP Obligations and/or the Prepetition First Lien or Second Lien Indebtedness, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens, or the Adequate Protection Replacement Liens (or the value of any of the Prepetition Collateral or DIP Collateral); (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Prepetition Liens, the Adequate Protection Replacement Liens or the other Prepetition Secured Parties' Adequate Protections; (v) except to contest the occurrence or continuation of any Event of Default as permitted in Paragraph 13(a), any action seeking, or having the effect of, preventing, hindering or otherwise delaying any or all of the DIP Secured Parties' and the Prepetition Secured Parties' assertion, enforcement or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Loan Documents, the Prepetition Loan Documents, the Interim Order or this Final Order; and/or (vi) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties hereunder or under the DIP Loan Documents or the Prepetition Loan Documents.

15. **Limitations in Respect of the Roll Up DIP Loans**. The full amount of the Roll Up DIP Loans will not be required to be repaid in cash on the Maturity Date, but instead shall be treated (i) in the manner set forth in the Plan, or (ii) in any other manner acceptable to the holders

of Roll Up DIP Loans representing at least two-thirds in amount and more than one-half in number of all Roll Up DIP Loans (such holders, the "**Requisite Roll Up DIP Lenders**"). Notwithstanding the foregoing, if the Plan has not been confirmed and become effective by the outer date specified in the DIP Credit Agreement (or such later date to which the requisite DIP Secured Parties have agreed in writing), and unless the Requisite Roll Up DIP Lenders otherwise agree in writing, all DIP Obligations in respect of the Roll Up DIP Facility shall become due and payable in full in cash.

16.     [Intentionally omitted].

17.     **Proofs of Claim**.  The DIP Secured Parties and the Prepetition First Lien Secured Parties shall not be required to file proofs of claim evidencing the DIP Obligations, the DIP Protections or the Prepetition First Lien Indebtedness, as applicable, in the Cases or in any Successor Case.

18.     **Preservation of Rights Granted under the Final Order**.

(a)     <u>No Non-Consensual Modification or Extension of Final Order</u>.  Unless all DIP Obligations shall have been indefeasibly been Paid in Full, the Debtors shall not seek, and it shall constitute an Event of Default (resulting, among other things, in the termination of the Debtors' right to use Cash Collateral), if there is entered (i) an order amending, supplementing, extending or otherwise modifying this Final Order or (ii) an order converting or dismissing any of the Cases, in each case, without the prior written consent of the DIP Agents, and no such consent shall be implied by any other action, inaction or acquiescence.

(b)     <u>Dismissal</u>.  If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that

the DIP Protections, the Prepetition Secured Parties' Adequate Protections and shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations have been indefeasibly Paid in Full and all Prepetition Secured Parties' Adequate Protections have been indefeasibly paid in full in cash or otherwise satisfied in full (and that all DIP Protections, Prepetition Secured Parties' Adequate Protections shall, notwithstanding such dismissal, remain binding on all parties in interest).

(c)     <u>Modification of Final Order</u>.  Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facilities contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed by a subsequent order of this Court or any other court, the DIP Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such reversal, modification, vacatur or stay shall affect (i) the validity, priority or enforceability of any DIP Protections, Prepetition Secured Parties' Adequate Protections granted or incurred prior to the actual receipt of written notice by the DIP Agents or the Prepetition Agents, as the case may be, of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any Lien or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations, Prepetition Secured Parties' Adequate Protections.  Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral or any DIP Obligations, Prepetition Secured Parties' Adequate Protections incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Agents or Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Secured Parties, the Prepetition Secured

48

Parties shall be entitled to all of the DIP Protections, Prepetition Secured Parties' Adequate Protections, as the case may be, and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral and all DIP Obligations and Prepetition Secured Parties' Adequate Protections.

     (d)    <u>Survival of Final Order</u>. The provisions of this Final Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections, Prepetition Secured Parties' Adequate Protections, and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted to any or all of the DIP Secured Parties, Prepetition Secured Parties shall survive, and shall not be modified, impaired or discharged by, the entry of any order confirming any plan of reorganization in any Case, converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Case or providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court, or terminating the joint administration of these Cases or by any other act or omission. The terms and provisions of this Final Order, including all of the DIP Protections, Prepetition Secured Parties' Adequate Protections and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted to any or all of the DIP Secured Parties, Prepetition Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such DIP Protections, Prepetition Secured Parties' Adequate Protections shall continue in these proceedings and in any Successor Case, and shall maintain their respective priorities as provided by this Final Order. Subject to the provisions of this Final Order, the Interim Order and the DIP Loan Documents that permit the treatment of the DIP Obligations under the Roll Up DIP Facility pursuant to the Plan or any

other Chapter 11 plan with respect to any of the Debtors, the DIP Obligations shall not be discharged by the entry of an order confirming the Plan or any other such Chapter 11 plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

19.    **Affiliate Payments; Inter-Debtor Borrowings**.  Except as otherwise set forth in the Approved Budget or as otherwise agreed in writing by the DIP Agents and the requisite DIP Secured Parties in their sole discretion, and subject to the remainder of this Paragraph, no Debtor shall make any loans, advances, distributions, transfers or other payments of any kind whatsoever to any other Debtor or any Affiliate.  All intercompany claims arising from any permitted postpetition loans, advances, distributions, transfers or other payments from any Debtor to another Debtor shall constitute administrative expense claims against the estate of the applicable borrowing Debtor, and shall be junior and subordinate to the DIP Obligations and the Prepetition First Lien Indebtedness and shall be subject to the DIP Liens, the DIP Super-Priority Administrative Claims, the Prepetition First Liens and the Adequate Protection Super-Priority Administrative Claims.

20.    **Other Rights and Obligations**.

(a)    <u>Expenses</u>.  As provided in the DIP Loan Documents, the applicable Debtors will pay all reasonable expenses incurred by the DIP Agents (including, without limitation, the reasonable fees and disbursements of all counsel for GECC and Credit Suisse and any internal or third-party appraisers, consultants and auditors advising any DIP Agent) in connection with the preparation, execution, delivery and administration of the DIP Loan Documents, the Interim Order, this Final Order and any other agreements, instruments, pleadings or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are

consummated. Payment of such fees shall not be subject to allowance by this Court. Copies of invoices submitted to the Debtors by professionals for the DIP Agents and the Prepetition First Lien Agents (collectively, the "**Lender Professionals**") shall be forwarded by the Debtors to the U.S. Trustee and such other parties as the Court may direct. The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential or sensitive information). If the Debtors or the U.S. Trustee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten (10) days of receipt of such invoices, the Debtors or U.S. Trustee, as the case may be, shall file and serve on such Lender Professionals an objection with the Court (the "**Fee Objection**") limited to the issue of reasonableness of such fees and expenses. The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed.

(b)     Binding Effect. The provisions of this Final Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Prepetition Note Parties, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; provided, however, that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the

use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(c) No Waiver. Neither the failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the Interim Order, the Prepetition Loan Documents or otherwise (or any delay in seeking or exercising same), nor the failure of the DIP Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Final Order, the Interim Order, the DIP Loan Documents or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise. Except as expressly provided herein, nothing contained in this Final Order (including, without limitation, the authorization of the use of any Cash collateral) shall impair or modify any rights, claims or defenses available in law or equity to any Prepetition Secured Party or any DIP Secured Party, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion). Except as prohibited by this Final Order and the PSA, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Prepetition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, to (i) request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code and the PSA, any Chapter 11 plan or plans with respect to any of the Debtors, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties, respectively. Except to

the extent otherwise expressly provided in this Final Order, neither the commencement of the Cases nor the entry of this Final Order shall limit or otherwise modify the rights and remedies of the Prepetition Secured Parties with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition Credit Facilities, applicable law or equity.

(d)     No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the Interim Order or the DIP Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates.

(e)     No Marshaling.  Neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

(f)     Amendments.  The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, in each case unless such amendment, modification, supplement or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate), (ii) increases the aggregate lending commitments of all of the DIP Lenders in respect of the DIP Facilities, (iii) changes the Maturity Date, or (iv) add or amend (in any respect unfavorable to the Debtors) any Event of Default or

any financial covenant. No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of all the Debtors and the DIP Agents (after having obtained the approval of the requisite DIP Secured Parties as provided in the DIP Loan Documents) and, except as provided herein, approved by this Court.

(g)     Inconsistency.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents, the Interim Order and this Final Order, the provisions of this Final Order shall govern and control.

(h)     Enforceability.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

(i)     Headings.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

(j)     Retention of Jurisdiction.  The Bankruptcy Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: October 3 2009

_____
PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

CH\1129761.6